APPEAL NO. \_\_\_\_

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

———

Ohio Democratic Party,

*Plaintiff-Appellee*,

v.

Ohio Republican Party; Donald J. Trump for President, Inc.; Roger J. Stone Jr.;
and Stop the Steal, Inc.

*Defendants-Appellants*.

———

On Appeal from the United States District Court
For the Northern District of Ohio Eastern Division
Case No. 1:16-cv-2645
Judge James S. Gwin

———

**DEFENDANT-APPELLANT DONALD J. TRUMP FOR PRESIDENT, INC.'S EMERGENCY PETITION FOR INITIAL HEARING EN BANC**

———

Chad A. Readler
JONES DAY
325 John H. McConnell Blvd., Ste. 600
Columbus, Ohio 43215
(614) 469-3939

*Counsel for Appellant
Donald J. Trump for President, Inc.*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellant Donald J. Trump for President, Inc. state as follows:

Donald J. Trump for President, Inc. is not a parent, subsidiary or other affiliate of a publicly owned corporation, nor does a publicly owned corporation have any interest in Donald J. Trump for President, Inc.

## DEFENDANT-APPELLANT DONALD J. TRUMP, INC.'S EMERGENCY PETITION FOR INITIAL HEARING EN BANC

Defendant-Appellant Donald J. Trump for President, Inc. hereby seeks initial hearing en banc of this appeal on an issue of exceptional importance: the propriety of a sweeping temporary restraining order that enjoins every single person in Ohio from engaging in entirely proper, core election-related conduct between now the 2016 general election three days away.  *See* FED. R. APP. P. 35(a).

## INTRODUCTION

On an evidentiary record consisting of quotes from speeches by national political candidates and a confirmation by Plaintiff the Ohio Democratic Party that no acts of voter intimidation have taken place this election season in Ohio, the district court granted Plaintiff's emergency request that Donald J. Trump for President, Inc. (the "Campaign") and its supporters be enjoined from a sweeping range of ill-defined conduct in the final days of the 2016 Presidential election.  That conduct includes—*"but [is] not limited to"*—a seven-part list that ranges from "describing" (to apparently anyone at any time) "the penalties under any Ohio or Federal statute for impermissibly casting a ballot," to "taking photos" of any "voters" (apparently including one's friends or a selfie) "around a polling place," to "delaying a voter . . . from reaching the . . . polling place," whether the delay seemingly was caused by attempting to hand them campaign literature or an accident on the highway.  Opinion & Order ("Order") at ¶¶ a, d, f, Dkt. 27 (Exhibit 1).

2

For good measure, the district court then applied its sweeping order to "other individuals and groups, including groups associated with the Clinton for Presidency campaign." *Id.* at 2-3. And it did all of this gutting of the First Amendment without even indicating the statute it was relying on to support it.

This Order not only federalizes Ohio law (which already prohibited voter intimidation)—it literally imposes a comprehensive election code the court will apparently continue to invent on the fly. And it imposes that evolving federal code on seemingly every Ohioan, not just the parties before the court below. Left to stand, that Order irreparably harms the Campaign as well as any unsuspecting citizen who falls in the district court's crosshairs. It should be stayed immediately.

\*   \*   \*   \*   \*

First, the facts. Plaintiff's allegations were grave: the Trump campaign purportedly conspired with a host of others to illicitly suppress voter participation. And its request for relief was remarkable: an extraordinary, last-minute intervention in the presidential election. But the evidence offered to justify the request was scant: a handful of statements by a presidential candidate making his pitch to voters. Absent from the record was any evidence of voter intimidation in Ohio in 2016. David Pepper, the Chairman of the Ohio Democratic Party, admitted that he had "not learned of any cases of voter intimidation" anywhere in Ohio. Dkt. 20-1,

3

¶2.[1]  That, even after three weeks of early in-person voting, where hundreds of thousands of Ohioans voted, all in the presence of duly-appointed Republican poll observers—the Campaign's alleged co-conspirators.

The absence of such evidence is no surprise. All of the Campaign's authorized poll watchers are trained on how they must comport themselves while serving in that role. Training materials explain that it is "critical" each poll watcher "maintain a professional, courteous demeanor at all times and absolutely never do anything to disrupt or interfere with the voting process." (Dkt. 26-1 at 1 (emphasis original).) The materials even warn that "any behavior" contrary to these instructions "will not be tolerated under any circumstances." (*Id.*) In the end, the evidentiary record consisted primarily of empty rhetoric designed to score political points rather than actual misconduct justifying a statewide restraint on political speech.

Next, the law. Despite requiring that seemingly every Ohioan follow a series of rules imposed by the court—some of which will apparently be written after-the-fact—the court does not actually find any actual or imminent violation of any statute. None. It simply recites two statutes (gratuitously labeling one of them, the Enforcement Act of 1871, 42 U.S.C. § 1985, as the "KKK Act"), quotes a few statements by Donald Trump at rallies outside Ohio, and a *Boston Globe* article

---

[1] Pursuant to 6th Cir. R. 27(c)(2), the substantive filings in the district court are attached as Exhibit 4.

quoting an unnamed voter about his supposed plans. That smattering of statements is not enough to justify *any* relief under *any* statute, let alone the sweeping relief the district court ordered under the venerable civil rights laws Plaintiff's have deployed in this transparently political exercise.

Even worse, the order tramples upon core First Amendment freedoms. It imposes vague prohibitions against poorly defined categories of core political activity—talking to voters, giving information to voters, etc.—that guarantee hundreds (if not thousands) of Ohioans will be chilled from participating in our democratic process. One example illustrates the point. The order prohibits anyone from having a truthful discussion about voting rules with another voter when the two are heading inside to vote. Order at 3. Such a prohibition clearly violates the First Amendment.

Further troubling is the fact the court flexed its federal muscle against the backdrop of an extensive array of Ohio voting rules, including express prohibitions on voter coercion.[2] In some respects, the court seems to have exceeded Ohio law

---

[2] *See, e.g.,* Ohio Rev. Code 3599.01(A)(2) (Bribery) ("No person shall before, during, or after any primary, convention, or election . . . [a]ttempt by intimidation, coercion, or other unlawful means to induce such delegate or elector to register or refrain from registering or to vote or refrain from voting at a primary, convention, or election for a particular person, question, or issue."); Ohio Rev. Code 3599.24(A)(5) (Interference with conduct of election) ("No person shall do any of the following: . . . [l]oiter in or about a registration or polling place during registration or the casting and counting of ballots so as to hinder, delay, or interfere with the conduct of the registration or election.").

in the range of political speech it restricts. But in many other respects, the court merely "ordered compliance with . . . the Ohio Revised Code." Order at 2. In that sense, the Order essentially federalizes Ohio voting laws, usurping state court jurisdiction over previously state-regulated conduct. The Order also thus violates the well-established principle that injunctions cannot issue merely to order parties to "obey the law." *See E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n*, 727 F.2d 566, 576 (6th Cir. 1984). Believing that this settled rule applies only to "hypergeneralized orders to indefinitely abide by broad legal commands," Order at 2, the court distinguished today's relief as ordering "compliance with specific provisions of the Ohio Revised Code," apparently exempting this "follow Ohio law" order from the reach of precedent barring other orders of the same ilk.

If the court's Order appears puzzling to this Court, think of how it must appear to everyday Ohioans, none of whom were parties to the case, but all of whom are covered by the Order. To be sure, the Order outlaws "voter intimidation activity." *Id.* at 3. But what specifically are Ohioans barred from doing with respect to voting? The untailored list of examples of such activity in the order offers more confusion than clarity. And compounding matters, the Order also prohibits "activity including but not limited to" the activity articulated in the Order. *Id.* at 3. So who could fault a voter who claims to be confused by this judicial proclamation? The order, after all, expressly refuses to say what it proscribes.

All the more troubling is the core conduct the Order seeks to regulate: political organizing, political volunteerism, and political speech. Viewed in this light, it should be unsurprising that other state Democratic parties have failed to secure relief in the exact same setting, Today's case is one of six cookie-cutter lawsuits involving the same allegations filed in political "swing states" (Arizona, Michigan, Nevada, North Carolina, and Pennsylvania, along with Ohio) by the resident Democratic state party. In the other two cases that have reached resolution, the courts there denied the plaintiffs relief. In Nevada, Judge Boulware, after holding three separate evidentiary hearings on plaintiff's TRO request, denied relief in full. *See* http://electionlawblog.org/?p=88780. (*Nevada State Democratic Party v. Nevada Republican Party*, No. 2:16-cv-02514 (Nov. 4, 2016) (order to be submitted when publicly available). Likewise, in Arizona, Judge Tuchi denied plaintiff's TRO request in a 25-page written order after an evidentiary hearing, concluding that plaintiff failed to show a likelihood of success on the same two claims raised in this action. *See* Order, *Arizona Democratic Party v. Arizona Republican Party*, No. 16-cv-03752 (Nov. 4, 2016) (Exhibit 3). Judge Tuchi explained that plaintiff "has not demonstrated it is likely to succeed in showing the statements and actions of Defendants to-date constitute intimidation, threat, coercion or force against voters for voting or attempting to vote in violation of" the relevant statutes. *Id*. at 24.

The result should be no different here. As this Court recently explained, "[w]hen an election is 'imminen[t]' and when there is 'inadequate time to resolve [] factual disputes' and legal disputes, courts will generally decline to grant an injunction to alter a State's established election procedures." *Crookston v. Johnson*, — F.3d —, No. 16-2490, 2016 WL 6311623, at *2 (6th Cir. Oct. 28, 2016). In view of the empty record on which it acted, the district court plainly disregarded this instruction. Accordingly, the Court should stay the district court's order, leaving the election to the voters and well-worn, effective state legal rules, rather than routing that entire process in the federal courts.

## ARGUMENT

To avoid cluttering the Court's docket with additional paper, the Campaign hereby expressly incorporates by reference its arguments made in support of its Emergency Motion for Stay, which was filed contemporaneously with this petition.

## CONCLUSION AND RELIEF REQUESTED

The Campaign respectfully asks this Court to grant the petition for initial hearing en banc, stay the district court's order, and reverse the district court's order.

Dated:  November 5, 2016	Respectfully submitted,

	*/s/ Chad A. Readler*
	Chad A. Readler
	E-mail:  careadler@jonesday.com
	Jones Day
	325 John H. McConnell Blvd.
	Suite 600
	Columbus, Ohio  43215-2673
	Telephone:  614.469.3939
	Facsimile:   614.461.4198


	*Counsel for Donald J. Trump for President Inc.*

9

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2016, I submitted to the Clerk of Courts and Deputy Clerk of Courts for the United States Court of Appeals for the Sixth Circuit this Emergency Petition For Initial Hearing En Banc via e-mail pursuant to instructions from the Clerk's Office for emergency filings, and further certify that opposing counsel was copied on that e-mail.

s/ Chad A. Readler
*Counsel for Donald J. Trump for President, Inc.*
